Kaye, J.
(dissenting). The court’s cursory treatment of defendant’s claim has two effects, both undesirable. First, it signals such a broad hands-off approach to the purported exercise of trial court discretion as to render any right of review virtually meaningless. Second, and perhaps even more damaging, it sanctions an unwillingness to deal realistically with the concerns engendered by the growing body of research concerning the reliability of eyewitness identifications.
The decision whether to admit expert testimony is of course committed primarily to the sound discretion of the trial court, and our power to review an exercise of that discretion is an appropriately limited one (People v Cronin, 60 NY2d 430, 433). We do, however, have the power to review even a trial court’s discretionary decision where the legal claim is made that, through application of an incorrect standard, the court failed to exercise its discretion, or that its decision was so unreasonable as to constitute a clear abuse.
In this case, the trial court had before it extensive submissions from both parties in connection with defendant’s motion *829 for admission of the trial testimony of Dr. Robert Buckhout, a psychologist whose field of expertise is the cognitive factors underlying eyewitness identification. The trial court is said to have exercised its discretion in the limited sense that it received the submissions, heard argument and stated three reasons for disallowing the testimony — none of them indicating an assessment of the facts or equities of this particular case. That surely does not insulate from our review defendant’s contention that the trial court’s rationale was legally insufficient to support the denial of his motion.
The trial court’s error is evident upon review of each of its three unelaborated reasons — set forth in full — for denying defendant’s motion.

1. "The accuracy and reliability of psychological tests regarding perceptual factors in identification have not been acceptfed] by the scientific community. ”

The first stated trial court reason refers to the test for admissibility of scientific evidence and clearly presents an important, fully preserved question of law now disregarded by this court.
Even assuming the Frye standard of "general acceptance in the particular field in which it belongs” (Frye v United States, 293 F 1013, 1014) to be the appropriate one,[1] there is a law issue as to whether the Frye test was met.
To the extent that judicial acceptance is indicative of general scientific acceptance, the emerging trend today is to find expert psychological testimony on eyewitness identification sufficiently reliable to be admitted, and the vast majority of academic commentators have urged its acceptance (see, United *830 States v Downing, 753 F2d 1224 [3d Cir]; People v McDonald, 37 Cal 3d 351, 690 P2d 709; State v Chapple, 660 P2d 1208 [Ariz]; United States v Smith, 736 F2d 1103 [6th Cir]; Note, Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification, 29 Stan L Rev 969, 1021-1023 [1977]; Comment, Admission of Expert Testimony on Eyewitness Identification, 73 Cal L Rev 1402 [1985]; Levine & Tapp, The Psychology of Criminal Identification: The Gap from Wade to Kirby, 121 U Pa L Rev 1079 [1973]; McCormick, Evidence § 206 [Cleary 3d ed]).[2] As the cited courts and commentators have found, psychological research data is by now abundant, and the findings based upon it concerning cognitive factors that may affect identification are quite uniform and well documented.
To be sure, there is a differing view, as the People strenuously urge: two psychologists have written articles expressing doubts as to the wisdom of expert testimony on the factors affecting eyewitness identification (see, Egeth & McCloskey, Expert Testimony About Eyewitness Behavior: Is It Safe and Effective, in Eyewitness Testimony: Psychological Perspectives, at 238 [Wells & Loftus eds 1984]; see also, Egeth & McCloskey, Eyewitness Identification: What Can a Psychologist Tell a Jury?, 38 Am Psychologist 550 [1983]). However, as the People do not dispute, theirs was a minority view and indeed, the skepticism of these two dissenters was largely based on their view that more research was necessary — which by now even in their view may well have been done. It is fair to say that there is broad acceptance of the cognitive principles about which Dr. Buckhout proposed to testify; the People, of course, were free to counter his testimony with that of their own witness.
Thus, I profoundly disagree with this court’s treatment of the significant law issue presented.
2. "[SJuch testimony * * * would be cumulative. The defendant states that Dr. Buckhout’s testimony is offered for the purpose of describing the effects of stress and other factors on identification testimony. It stands to reason that Counsel for the defendant *831 will certainly cross-examine the identifying witnesses on factors such as opportunity to observe, stress of the moment, lighting conditions, distance between the observer and defendant, motive to testify, interest in the case and all other factors which could influence the accuracy of identification testimony. Additionally, in his charge to the jury which is rboiler plate’, the trial judge will instruct the jury to take all those factors into consideration and apply common sense in doing so. ”
The second stated trial court reason for denying defendant’s motion was that the proposed testimony would be cumulative, as the same information about the effects of stress and other factors on identification testimony would be presented to the jury in the form of cross-examination of the identifying witnesses and the court’s charge on identification. That conclusion was incorrect as a matter of law.
Dr. Buckhout’s proposed testimony, according to defendant, was intended to provide the jury with a general analytical framework for evaluation of the eyewitness testimony, by presenting scientific data concerning certain factors involved in perception and memory. He did not propose to comment on whether any specific eyewitness identification made in this case was accurate or not. Areas of possible testimony identified in defendant’s motion included the relationship between stress and accurate identification, ways in which eyewitnesses might be particularly prone to suggestion, the phenomenon of "perceptual selectivity,” and the relationship between witness confidence in an identification and its accuracy.
This type of information is plainly not available through cross-examination of the individual identifying witnesses, or through the standard cautionary charge given by the trial court. The pattern jury charge on identification simply lists— without comment — a number of factors for the jury’s consideration relating to the witness’ opportunity to observe the perpetrator, such as the length of time elapsed during the witness’ observation and the witness’ mental state at the time (1 CJI[NY] 10.01). Contrary to the trial court’s conclusion, Dr. Buckhout’s testimony would not have merely duplicated this charge. As defendant urged, such evidence would have shown, for example, that it is common for witnesses under stress to overestimate considerably the length of an event, that high stress may bear an inverse relationship to accuracy of identifi *832 cation, and that there is no positive correlation between confidence in and accuracy of identification.
While a judgment regarding whether testimony would be cumulative in a particular case might well be a discretionary one, in this case there was absolutely nothing in the record to support that conclusion.

3. "Expert testimony must by the very nature, be beyond the ken of jurors whose basic intelligence should not be underestimated. The jury’s function to judge the facts should not be usurped unless expert testimony is required and necessary to assist them. It was stated concisely in People v Valentine 53 A.D.2d 832 (1st Department) that there must be no infringement 'upon a properly instructed jury’s power to determine the reliability of the People’s evidence.’ ”

As the third and final trial court ground for denying the motion, the court opined that the proposed testimony was not beyond the jury’s ken and that its admission would usurp the jury’s function to determine the reliability of the witnesses. As for the claim that the testimony would somehow preempt the jury’s function, that has long been discredited as a test for expert testimony (see, People v Cronin, 60 NY2d 430, 432-433).
The notion that jurors are generally aware from their everyday experience of the factors relevant to the reliability of eyewitness observation and identification has not only been properly condemned as "makeshift reasoning” (see, McCormick, Evidence § 206, at 624 [Cleary 3d ed]), but also has been refuted by research demonstrating a number of common and widely held misconceptions on the subject among laypersons (see, Brigham & Bothwell, The Ability of Prospective Jurors to Estimate the Accuracy of Eyewitness Identifications, 7 Law & Human Behav 19 [1983]; Deffenbacher & Loftus, Do Jurors Share a Common Understanding Concerning Eyewitness Behavior•?, 6 Law & Human Behav 15 [1982]).
But even if the proposed testimony was not beyond the jury’s ken, we have repeatedly upheld the admission of expert testimony for the purpose of clarifying an area of which the jurors have a general awareness (see, Selkowitz v County of Nassau, 45 NY2d 97, 101-102; De Long v County of Erie, 60 NY2d 296, 307-308). Most recently, we agreed that admission of general psychological evidence about "rape trauma syndrome” was proper, where the testimony was introduced "to *833 dispel misconceptions that jurors might possess” (People v Taylor, 75 NY2d 277, 293). As the proposed testimony was offered for that very purpose, it was in my view error to preclude it on the ground that it touched on matters within the jury’s knowledge, without also considering its potential for clarification.
I do not suggest that a trial court must permit expert testimony on eyewitness identification in every case, or even most cases, in which it is offered. Appellate courts that have found such testimony admissible in theory have nonetheless preserved ample room for trial court exercise of discretion through weighing of such factors as the centrality of the identification issue to the particular facts, the existence of other evidence corroborating the identifications, the relevance of the proposed testimony to specific facts of the case at hand, and of course through the trial court’s power to limit the amount and type of evidence presented. Here, however, the trial court’s preclusion of Dr. Buckhout’s testimony was not the result of such a discretionary assessment of the probative value of the testimony in relation to the facts of this case. Rather, it was based on a mistaken and entirely general legal analysis that this court now erroneously refuses to address.
I therefore dissent.
Chief Judge Wachtler and Judges Simons, Titone, Hancock, Jr., and Bellacosa concur; Judge Kaye dissents and votes to reverse in an opinion in which Judge Alexander concurs.
Order affirmed in a memorandum.

. There is rapidly growing dissatisfaction among courts and commentators with the Frye test itself (see, McCormick, Evidence § 203, at 605-609 [Cleary 3d ed]). Moreover, even if that test is applicable to the results of certain processes such as lie detectors, voiceprints and hypnosis — as defendant argued in his motion before the trial court — it does not necessarily follow that it is the appropriate standard to be applied to the testimony of a qualified psychologist who proposes to explain to the jury how certain factors shown by the record can affect perception and memory, and thus the accuracy of identification testimony. Several courts have concluded that regardless of the general validity of the Frye standard, it should not be used in this context (see, People v McDonald, 37 Cal 3d 351, 690 P2d 709; United States v Downing, 753 F2d 1224 [3d Cir]; Bloodsworth v State, 307 Md 164, 512 A2d 1056; see also, Note, Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification, 29 Stan L Rev 969, 1021-1023 [1977]; cf., People v Fisher, 53 NY2d 907, 909).

. As the California Supreme Court noted in People v McDonald (37 Cal 3d 351, 690 P2d 709), the apparent unanimity of earlier appellate decisions holding that it was not an abuse of discretion to exclude the testimony may be misleading, as the issue would normally not arise when the testimony was admitted; the evidence available suggested that even by 1984, such testimony had been admitted in scores of cases.